1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>        v.<br><br>WALID JAMIL,<br><br>              Defendant. | Case No. 15-CR-00264-LHK-4<br><br>**ORDER GRANTING COMPASSIONATE RELEASE**<br><br>Re: Dkt. No. 765 |
| --- | --- |

Defendant Walid Jamil is currently in the custody of the Bureau of Prisons ("BOP") and incarcerated at the federal correctional institution in Morgantown, West Virginia ("FCI Morgantown"). Defendant Jamil moves for a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), also known as compassionate release. For the reasons set forth below, the Court GRANTS Defendant Jamil's motion.

## I.     BACKGROUND

On October 7, 2016, Defendant Jamil pleaded guilty to one count of conspiracy to traffic in counterfeit goods, in violation of 18 U.S.C. § 2320(a), and one count of conspiracy to commit criminal copyright infringement and to introduce misbranded food into interstate commerce, in violation of 18 U.S.C. § 371. ECF Nos. 169, 297.

1

On April 26, 2017, this Court sentenced Defendant Jamil to 84 months imprisonment on Count One, 60 months imprisonment on Count Two to run concurrently, three years of supervised release, restitution in the amount of $555,801.00, and a $200.00 special assessment.  ECF Nos. 579, 583.  The Court ordered Defendant Jamil to self-surrender date on July 17, 2017.  *Id.* Defendant Jamil is presently serving his sentence at FCI Morgantown, with a BOP-projected release date of July 2, 2023.  ECF No. 765 at 1; ECF No. 770 at 7; *see also* http:www.bop.gov/inmateloc, register no. 51110-039 (last viewed May 18, 2020).  As of the time of the filing of the instant Order, Defendant Jamil has served approximately 34 months of his 84-month sentence.  The Government has represented that Defendant Jamil would be released to home confinement in January 2021 after he served 50 percent of his sentence.  Opp. at 1 n.1.  At the time of this order, Defendant Jamil has served approximately 40 percent of his sentence.  *Id.*

On April 8, 2020, Defendant Jamil, through counsel, submitted his administrative request for compassionate release to the Warden of FCI Morgantown.  *See* ECF No. 765 at 2; *id.*, Ex. 1. Defendant Jamil sought compassionate release "due to the COVID-19 pandemic and his diabetic condition."  *Id.*, Ex. 1 at 1.  Defendant Jamil represented that he "will live with his wife, Awatif Jamil, who resides at 2663 Heron Hills Dr, Wolverine Lake, MI 48390" and "use his savings and the assistance of family to support himself."  *Id.*

On April 20, 2020, after failing to receive a response from the Warden of FCI Morgantown, Defendant Jamil filed the instant motion for compassionate release.  ECF No. 765 ("Mot.").  Defendant Jamil explains that he "is a sixty-year-old diabetic" who "suffers from hypertension and high cholesterol."  *Id.* at 1.  Defendant Jamil takes insulin twice daily along with a number of other medications.  *Id.*  Because these conditions "make him particularly vulnerable to COVID-19," Defendant Jamil requests compassionate release.  *Id.*

On May 5, 2020, the Government filed an opposition to Defendant Jamil's motion for compassionate release.  ECF No. 770 ("Opp.").  On May 12, 2020, Defendant Jamil filed a reply. ECF No. 776 ("Reply").

On May 11, 2020, the Government filed a supplemental memorandum that notified the

United States District Court
Northern District of California

1    Court that on May 5, 2020, the Warden of FCI Morgantown denied Defendant Jamil's April 8,

2    2020 request for compassionate release.  ECF No. 775.  According to the Warden's response,

3    "COVID-19 d[id] not currently warrant an early release from [Defendant Jamil's] sentence."  ECF

4    No. 775-1.

5        On May 15, 2020, the Government filed a second supplemental memorandum withdrawing

6    its opposition to Defendant Jamil's motion on the basis that Jamil had waived his right to file a

7    motion for compassionate release.  ECF No. 777 ("The United States hereby withdraws reliance

8    on defendant Walid Jamil's waiver to seek relief under 18 U.S.C. § 3582 in opposing his motion

9    for compassionate release.").

10   **II.     LEGAL STANDARD**

11       18 U.S.C. § 3582(c) allows a court to modify a defendant's "term of imprisonment

12   . . . upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant."  A

13   defendant may bring a § 3582(c) motion after he has "fully exhausted all administrative rights to

14   appeal a failure of the Bureau of Prisons" to bring the motion on his behalf, or after "the lapse of

15   30 days from the receipt of such a request by the warden of the defendant's facility, whichever is

16   earlier." 18 U.S.C. § 3582(c)(1)(A).

17        "[A]fter considering the factors set forth in § 3553(a) to the extent applicable," a court

18   may grant the motion to reduce the defendant's sentence in two circumstances.  As relevant here, a

19   court may reduce a defendant's sentence if it finds "extraordinary and compelling reasons warrant

20   such a reduction" and that "such a reduction is consistent with applicable policy statements issued

21   by the Sentencing Commission."  *Id.* § 3582(c)(1)(A).  The relevant Sentencing Commission

22   policy statement enumerates several "extraordinary and compelling reasons."  U.S. Sentencing

23   Guidelines ("U.S.S.G") § 1B1.13(1)(A) & cmt. 1.  A defendant fulfills one of the enumerated

24   reasons when the defendant is "suffering from a serious physical or medical condition . . . that

25   substantially diminishes the ability of the defendant to provide self-care within the environment of

26   a correctional facility and from which he or she is not expected to recover." *Id.* § 1B1.13 cmt.

27   1(A)(ii).  The Commission also requires that the defendant not pose a danger to the safety of the

28

3

United States District Court
Northern District of California

1    community. *Id.* § 1B1.13(2).

2    **III.    DISCUSSION**

3          In analyzing whether a defendant is entitled to compassionate release under 18 U.S.C.

4    § 3582(c)(1)(A)(i), courts determine whether a defendant has satisfied three requirements.  First, a

5    defendant must exhaust his administrative remedies.[1]  Second, a defendant must establish that the

6    § 3553(a) sentencing factors "are consistent with" granting a motion for compassionate release.

7    *United States v. Trent*, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020).  Third, a defendant

8    must demonstrate that "extraordinary and compelling reasons"—as defined by the applicable

9    Sentencing Commission policy statement—"warrant . . . a reduction." 18 U.S.C.

10   § 3582(c)(1)(A)(i).

11         As to the first requirement, exhaustion, the Government concedes that as of May 8, 2020,

12   Plaintiff Jamil exhausted his administrative remedies because 30 days lapsed from the receipt of

13   Plaintiff Jamil's April 8, 2020 request to the Warden of FCI Morgantown.  Opp. at 2-3; *see* 18

14   U.S.C. § 3582(c)(1)(A) (allowing a court to modify a term of imprisonment "upon motion of the

15   defendant after . . . the lapse of 30 days from the receipt of such a request [to bring a motion on

16   defendant's behalf] by the warden of the defendant's facility").  Moreover, the Warden denied

17   Jamil's request on May 5, 2020.

18         As a result, only the second and third requirements are at issue in the instant case, which

19   the Court addresses in turn below.  The Court begins its analysis with a consideration of the

20   § 3553(a) sentencing factors before turning to whether Defendant Jamil demonstrated that

21   "extraordinary and compelling reasons warrant [a sentence] reduction." 18 U.S.C.

22   §3582(c)(1)(A).

23

24   [1] Courts disagree as to whether Section 3582's exhaustion requirement is jurisdictional and subject
     to equitable exceptions.  *Compare United States v.* Connell, --- F. Supp. 3d ---, 2020 WL 2315858,
25   at *2-5 (N.D. Cal. May 8, 2020) (finding "Section 3582's exhaustion provision is . . . not
     jurisdictional" and subject to equitable exceptions), *with United States v. Reid*, 2020 WL 1904598,
26   at *4 (N.D. Cal. Apr. 18, 2020) ("The Court cannot forgive the failure to exhaust, and without
     exhaustion, the Court lacks jurisdiction over the motion [for compassionate release].").  However,
27   the Court need not reach this issue because both parties in the instant case agree that Defendant
     Jamil has exhausted his administrative remedies.

28
     Case No. 15-CR-00264-LHK-4
     ORDER GRANTING COMPASSIONATE RELEASE

United States District Court
Northern District of California

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### A.  Section 3553(a) Sentencing Factors

18 U.S.C. § 3581(c)(1)(A) requires that courts "consider[] the factors set forth in section 3553(a)."  Those factors include, among other things, the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed medical care in the most effective manner; and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.  18 U.S.C. § 3553(a).

Here, Defendant Jamil pleaded guilty to one count of conspiracy to traffic in counterfeit goods, in violation of 18 U.S.C. § 2320(a), and one count of conspiracy to commit criminal copyright infringement and to introduce misbranded food into interstate commerce, in violation of 18 U.S.C. § 371.  ECF Nos. 169, 297.  Defendant Jamil's offenses posed a danger to public safety because Jamil and others manufactured and sold counterfeit food products with no government regulation and false labeling.  These products were then ingested by unknowing members of the public.

Although Defendant Jamil committed serious offenses, the Court also considers, as it did during sentencing, a number of factors that weigh in favor of granting Defendant Jamil's motion.  For example, as the Court found during sentencing, and as the Government concedes, Defendant Jamil does not have a criminal history prior to the instant conviction.  ECF No. 587 at 28 (transcript of April 26, 2017 sentencing).  Furthermore, Defendant Jamil's crimes—though serious—were non-violent, which weighs in his favor.  *See, e.g.*, *United States v. Reid*, 2020 WL 2128855, at *2 (N.D. Cal. May 5, 2020) (finding that Defendant's status as a "non-violent offender" weighed in favor of granting compassionate release).  Additionally, Defendant Jamil accepted responsibility by pleading guilty, for which the Court granted him a three-level reduction at sentencing.  ECF No. 587 at 50.  Moreover, neither the Warden of FCI Morgantown nor the Government cite any rules violations or misconduct by Defendant Jamil during his 34 months of

5

United States District Court
Northern District of California

1    incarceration.  In light of these considerations, the nature and circumstances of Defendant Jamil's

2    offense and the need for a sentence to reflect the offense's seriousness, to afford adequate

3    deterrence, to promote respect for the law, and to protect the public from any future crimes weigh

4    in favor of granting Defendant Jamil's motion for compassionate release.

5         Moreover, another § 3553(a) factor weighs in Defendant Jamil's favor.  In conducting the

6    § 3553(a) analysis, courts must "consider . . . the need for the sentence imposed . . . to provide the

7    defendant with needed . . . medical care . . . in the most effective manner."  18 U.S.C.

8    § 3553(a)(2)(D).  As courts have concluded, defendants are "unlikely to be able to get the medical

9    care [they] need[] [while imprisoned] in the midst of the pandemic."  *United States v. Connell*, ---

10   F. Supp. 3d ---, 2020 WL 2315858, at *6 (N.D. Cal. May 8, 2020).

11        Here, Defendant Jamil is a sixty-year-old diabetic who suffers from hypertension and high

12   cholesterol.  Defendant Jamil takes insulin twice daily along with a number of medications.

13   "Individuals . . . who suffer from [hypertension, high cholesterol, and diabetes], are now known to

14   have a higher risk of becoming infected with, being hospitalized due to, and even dying from

15   COVID-19."  *Id.* (citing CDC statistics).  Indeed, the Government "acknowledges that according

16   to the CDC guidelines, Defendant's medical conditions place him at risk of contracting COVID-

17   19."  Opp. at 12.

18        This is especially relevant because, as numerous courts have noted, the realities of

19   incarceration prevent imprisoned defendants from engaging in practices that reduce the risk of

20   contracting COVID-19.  *See, e.g.*, *United States v. Lucas*, 2020 WL 2059735, at *3 (W.D.N.Y.

21   Apr. 29, 2020) (noting that the "conditions [at FCI Morgantown] make the social distancing

22   required to minimize the risk of contracting COVID-19 nearly impossible" and that this "is not

23   surprising given the challenges social distancing presents in a prison or any facility with many

24   residents"); *Trent*, 2020 WL 1812242, at *2 ("Confined to a small cell where social distancing is

25   impossible, Trent cannot provide self-care because he cannot protect himself from the spread of a

26   dangerous and highly contagious virus." (alterations omitted) (quoting *United States v. Perez*, ---

27   F. Supp. 3d ---, 2020 WL 1546422, at *4 (S.D.N.Y. Apr. 1, 2020))).  Put simply, "[a]dequately

28

6

Case No. 15-CR-00264-LHK-4
ORDER GRANTING COMPASSIONATE RELEASE

1    caring for someone with underlying health conditions like [Defendant Jamil's] entails reducing

2    that individual's risk of exposure to COVID-19; keeping [Defendant Jamil] [incarcerated at FCI

3    Morgantown] is not the 'most effective manner' of mitigating that risk." *See Connell*, 2020 WL

4    2315858, at *6.

5         Finally, the court addresses the need to avoid unwarranted sentence disparities among

6    defendants with similar records who have been found guilty of similar conduct.  18 U.S.C.

7    § 3553(a)(6).  As the Government rightly notes, many of Defendant Jamil's co-defendants "served

8    their entire custodial sentences."  Opp. at 15.  According to the Government, co-Defendant Justin

9    Shayota served 6 months, Co-Defendant Raid Jamil served 24 months, and co-Defendant Leslie

10   Roman served 32 months.  *Id*.  However, the Government does not indicate whether any of these

11   co-Defendants qualified for good time credits and thus were released early.

12        The Government also correctly notes that as of the filing of this order, Defendant Jamil has

13   served 34 months of his 84-month sentence, or approximately 40 percent of his total sentence.

14   Opp. at 1 n.1.  Nonetheless, the Government also explains that Defendant Jamil was denied a

15   transfer to home confinement because he only served 40 percent of his sentence and that the BOP

16   is allowing home confinement for inmates who have served at least 50 percent of their sentences.

17   *Id*.  Therefore, according to the Government, Defendant must serve at least 50 percent of his

18   sentence to avoid unwarranted sentencing disparities—or what amounts to approximately eight

19   months' imprisonment.  *See id*.

20        The Court shares the Government's concerns about potential sentencing disparities and

21   notes that this factor, § 3553(a)(6), presents a close call.  However, Defendant Jamil's 34 months

22   in prison exceeds the amount of time served by any of his co-Defendants.  Co-Defendants Justin

23   Shayota, Raid Jamil, and Leslie Roman were sentenced to 6 months, 24 months, and 32 months

24   respectively.  Opp. at 15.

25        Of Defendant Jamil's co-Defendants, only co-Defendant Adriana Shayota and co-

26   Defendant Joseph Shayota are in currently in custody.  Both were convicted at trial in November

27   2016 and appealed their convictions.  ECF No. 467.  Both self-surrendered on December 2, 2019

28

Case No. 15-CR-00264-LHK-4
ORDER GRANTING COMPASSIONATE RELEASE

United States District Court
Northern District of California

1    after they lost their appeals.  ECF Nos. 752, 755, 757.  Currently, co-Defendant Adriana Shayota

2    is serving a 26-month sentence, less than the 34 months Defendant Jamil has served, with an

3    October 5, 2021 release date.  *Id.*  Additionally, co-Defendant Joseph Shayota has served five

4    months of an 86-month sentence with a January 8, 2026 release date.  *Id.*

5         Moreover, the Court notes that Defendant Jamil's sentence will not be limited to his time

6    served of 34 months.  Rather, Defendant Jamil will be required "to serve the remainder of his

7    sentence on home confinement."  Reply at 8.  Though home confinement is significantly different

8    from incarceration, Defendant Jamil "will still be required to serve the remainder of his sentence

9    of imprisonment, albeit in a different setting that is more likely to protect his health and safety."

10   *Lucas*, 2020 WL 2059735, at *4 (granting compassionate release to a defendant incarcerated at

11   FCI Morgantown).

12        Finally, as the Government notes, Defendant Jamil was denied a transfer to home

13   confinement because he had only served approximately 40 percent of his sentence instead of 50

14   percent.  Opp. at 1 n.1.  This 10 percent difference amounts to approximately eight months.

15   Though eight months is not an insignificant amount—as "[t]he length of the sentence remaining is

16   an additional factor to consider in any compassionate release analysis," with a longer remaining

17   sentence weighing against granting any such motion, *see Connell*, 2020 WL 2315858, at *6—"the

18   benefits of keeping Defendant in prison for [an additional eight months] are minimal, and the

19   potential consequences of doing so are extraordinarily grave," *United States v. Diep Thi Vo*, 2020

20   WL 2300101, at *3 (N.D. Cal. May 7, 2020) (quotation marks and internal alterations omitted).

21        Accordingly, the Court concludes that the § 3553(a) sentencing factors weigh in favor of

22   granting Defendant Jamil's motion for compassionate release.  As a result, the Court turns to the

23   third and final requirement: whether "extraordinary and compelling reasons warrant such a

24   reduction."  18 U.S.C. § 3582(c)(1)(A)(i).

25        **B.  Extraordinary and Compelling Reasons**

26        A court may reduce a defendant's sentence if it finds "extraordinary and compelling

27   reasons warrant such a reduction" and that "such a reduction is consistent with applicable policy

28
Case No. 15-CR-00264-LHK-4
ORDER GRANTING COMPASSIONATE RELEASE

United States District Court
Northern District of California

1    statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The relevant

2    Sentencing Commission policy statement enumerates several "extraordinary and compelling

3    reasons." U.S.S.G. § 1B1.13(1)(A) & cmt. 1. As mentioned above, a defendant fulfills one of

4    these reasons when the defendant is "suffering from a serious physical or medical condition

5    . . . that substantially diminishes the ability of the defendant to provide self-care within the

6    environment of a correctional facility and from which he or she is not expected to recover." *Id.*

7    § 1B1.13 cmt. 1(A)(ii). The Commission also requires that the defendant not pose a danger to the

8    safety of the community. *Id.* § 1B1.13(2).

9           Here, as explained above, Defendant Jamil suffers from a number of "serious physical or

10   medical condition[s]," including diabetes, hypertension, and high cholesterol, from which he "is

11   not expected to recover." *Id*. § 1B1.13 cmt. 1(A)(ii); *see also* ECF No. 765 at 1. Defendant Jamil

12   takes insulin twice daily along with a number of other medications. ECF No. 765 at 1. In the

13   context of the COVID-19 pandemic, "these medical conditions, which render [Defendant Jamil]

14   uniquely vulnerable to serious illness if he contracts COVID-19, 'substantially diminish[]' his

15   ability 'to provide self-care within the environment of a correctional facility.'" *See Trent*, 2020

16   WL 1812242, at *2 (quoting U.S.S.G. §1B1.13 cmt n.1(A)(ii)). Indeed, numerous courts "have

17   held that compassionate release is justified under such conditions." *United States v. Saad*, 2020

18   WL 2251808 (E.D. Mich. May 5, 2020) (collecting cases); *Connell*, 2020 WL 2315858, at *6

19   (granting compassionate release where defendant was 69 years old and suffered from

20   hypertension, high cholesterol, and pre-diabetes); *Reid*, 2020 WL 2128855, at *3 (granting

21   compassionate release where defendant suffered from hypertension, high cholesterol, and a bout of

22   Valley Fever).

23          The Government's main response centers on U.S.S.G. § 1B1.13(2)—namely, that

24   Defendant Jamil should not have his sentence reduced because he poses a danger to the safety of

25   the community. As the Court noted earlier, however, Defendant Jamil is a non-violent offender

26   without a prior criminal history who accepted responsibility for his crimes by pleading guilty and

27   has served 34 months in prison with no rules violations or any misconduct while incarcerated.

28

9

Case No. 15-CR-00264-LHK-4
ORDER GRANTING COMPASSIONATE RELEASE

1   ECF No. 587 at 27, 50.

2   The Government does not contest this, but rather argues that Defendant Jamil "presents an

3   economic danger to the community" and suggests that if released, Defendant Jamil will

4   manufacture and sell counterfeit products and flout social distancing guidelines. Opp. at 10-11. If

5   Defendant Jamil violates condition of supervised release, the Court has discretion to revoke

6   Defendant Jamil's term of supervised release and require Defendant Jamil to serve all or part of

7   his term of supervised release in prison. *See* 18 U.S.C. § 3583(e)(3).

8   Accordingly, the Court concludes that granting Defendant Jamil motion for compassionate

9   release will not endanger the community. As a result, the Court holds that "extraordinary and

10   compelling reasons warrant . . . a reduction" to Defendant Jamil's sentence.

11   **IV.    CONCLUSION**

12   For the foregoing reasons, the Court GRANTS Defendant Jamil's motion for

13   compassionate release. The BOP is directed to release Defendant Jamil from custody

14   immediately. His sentence of imprisonment is modified to time served. The remaining portion of

15   the original term of imprisonment—as calculated by the BOP—shall be served as supervised

16   release with the special condition that Defendant Jamil shall be subject to home confinement,

17   followed by the three-year term of supervised release imposed in the original sentence. Upon his

18   release and during his term of home confinement, Defendant Jamil will self-quarantine for 14 days

19   pursuant to CDC recommendations. The Government shall serve a copy of this order on the

20   Warden at FCI Morgantown forthwith.

21   **IT IS SO ORDERED.**

22   Dated: May 21, 2020

23
24   LUCY H. KOH
     United States District Judge

25

26

27

28
     Case No. 15-CR-00264-LHK-4
     ORDER GRANTING COMPASSIONATE RELEASE

United States District Court
Northern District of California